Altman, for use, *v.* Uniontown School District, Appellant.

Argued March 23, 1939. Before SCHAFFER, MAXEY, DREW, LINN and STERN, JJ.

*Jos. W. Ray, Jr.,* with him *J. B. Adams, Jr., Herman M. Buck* and *Shelby, Ray & Coldren,* for appellant.

*W. Brown Higbee,* of *Higbee, Lewellyn & Higbee,* with him *Wade K. Newell,* for appellee.

OPINION BY MR. JUSTICE DREW, April 24, 1939:

Plaintiff, an architect, brought this action to recover damages for an alleged breach of contract for professional services. On February 14, 1916, the Board of Directors of the defendant School District passed a resolution electing Harry W. Altman, plaintiff in the instant case, as architect to prepare plans and specifications for an addition to the high school building in the

School District of the City of Uniontown. Altman's commission was fixed by the resolution at "three and one-half per cent for plans and specifications, and one and one-half per cent for inspection on the contract price." Altman accepted the appointment and began work under his contract.

On May 8, 1916, Altman was told to stop work until further notice, but one month later, the Board paid him $600 on account and directed him to continue under his contract. Altman complied by working on the plans until November, 1917, when he delivered to the Board a bill for $3,300 on account, and, at the Board's request, a copy of the plans and specifications which were then 85% complete. On December 28, 1917, at a meeting attended by Altman, the Board passed a resolution authorizing the payment of $2,000 to Altman "on account of architectural service . . . with the understanding that there be no further bills presented or paid until the contract is let for the erection of the building." Until 1929 no addition was made to the high school building, but on May 23rd of that year the Board elected Emil R. Johnson as architect for "an addition to the Senior High School Building," and the work so authorized proceeded under Johnson's direction.

Thereupon Altman brought this suit. At the first trial a verdict was directed in favor of defendant, but upon motion and argument before the court en banc, a new trial was granted. The second trial resulted in a verdict for $5,060 in favor of plaintiff, and, following the dismissal of defendant's motion for judgment n. o. v. and a new trial, judgment was entered on the verdict. From this judgment defendant has appealed. The assignment by Altman to the use-plaintiff of his right of action under the contract is immaterial to the decision of this case.

It is apparent from a recital of the above facts that defendant was guilty of a breach of plaintiff's contract. Pursuant to his employment by the Board, Altman pre-

pared the plans and delivered them to the Board. These were accepted by the Board and still remain in its possession. Having accepted and retained Altman's plans, the Board employed another architect to design another building to be located on the same site, accepted these new plans, and proceeded to erect the building. By this action it prevented plaintiff from completing his work, and he was thereupon entitled to maintain an action on his contract for compensation for the services rendered by him.

Defendant's contention that the payment of $2,000 to Altman on December 28, 1917, discharged it from any further liability is clearly without merit. Defendant argues that the resolution adopted on that day discharged it from further liability until and unless the Board let a contract for the erection of the building planned by Altman. At the time this resolution was adopted, Altman's plans had been substantially completed and had been accepted by the Board. Leaving aside the question of consideration, which was not here raised, it is obvious that the language used in the resolution does not indicate an intention on the part of Altman to release the Board from its liability to pay for his plans if the Board later decided not to erect the building. The Board had already contracted to. pay for the plans, and in fact had made substantial payments on account, and the resolution merely suspended the time for making the final payment until the letting of the construction contract—a matter entirely within the Board's control. Since the Board by its own actions prevented Altman's plans from being utilized, obviously it cannot now claim that it is released from all liability.

Defendant further contends that the contract made by the Board in 1916 is not binding on successive boards. This argument overlooks the fact that in 1916 defendant was under a duty to provide adequate facilities for carrying on its educational program and had unquestioned authority to hire an architect to plan and design the

necessary buildings. This is not a case of an attempt by the Board in 1916 to enter into a contract which, would limit the discretion or dictate the building policies of future boards. It is rather the imposition of liability for breach of a contract which was valid when made. Since the contract was valid when made, a subsequent board could not undo what the former members had legally done and plaintiff was entitled to be paid for the services which he had rendered: *Hartmann v. The Pesotum Community Consolidated School District No. 52,* 325 Ill. 268, 269; *Jacobberger v. School District No. 1,* 122 Or. 124; *State ex rel. Campe v. Board of Education of Loudon District,* 94 W. Va. 408; see *Light v. Lebanon County,* 292 Pa. 494.

During the course of the trial defendant offered in evidence records to prove that its financial condition at the time the present contract was entered into was such that it could not have erected the building for which Altman drew plans, for the reason that the indebtedness thereby incurred would have exceeded its constitutional debt limit. Defendant's contention that the trial judge's exclusion of this evidence constituted reversible error cannot be sustained. Defendant makes no claim that the liability for the services performed by Altman alone created a debt in excess of its constitutional limitation. The contract with Altman did not describe the building other than that it was to be an addition to the high school building, and did not fix the cost. Under such circumstances the fact that the contract for the construction of the building, the estimated cost of which was $250,000, might exceed the district's debt limit can not affect the validity of plaintiff's contract, for the two contracts were separate and distinct and the invalidity of one cannot destroy the validity of the other. In this respect the instant case is governed by our decision in *Sauer v. School District of McKees Rocks,* 243 Pa. 294. In that case plaintiff was engaged by a school district to draw plans for a proposed building. Plaintiff's plans

were accepted and work was begun. The contract for construction, awarded to one Kreusler, was found to increase the indebtedness of the district beyond the constitutional limit and the construction work was stopped by injunction. Plaintiff thereupon brought suit to recover for the services performed by him. In holding that plaintiff's contract for designing the building was valid irrespective of the fact that the contract for construction exceeded the constitutional debt limit, this court said (p. 302) : "We do not agree with the appellant's contention that under the facts of this case the plaintiff's agreement became invalid because the board subsequently let the contract to Kreusler for erecting the superstructure for a sum which increased the indebtedness of the district beyond the two per cent limit fixed by the Constitution. The plaintiff's agreement when made was valid, and did not become illegal by the subsequent action of the board in letting the Kreusler contract. He was not concerned with the ultimate costs of the building and it did not enter into his contract, except as it fixed his compensation. He was not required to see that the board subsequently observed the law in contracting with others and did not unlawfully increase the debt limit in letting any or all of its contracts. . . . he had the right to assume and did assume that having a valid contract with it for his services, the board was not exceeding its powers in the construction of the building. Under these circumstances, therefore, the plaintiff could recover although the board intended when his contract was executed to create a debt exceeding the constitutional limit in the erection of the building." It is thus apparent that it was not error to exclude the evidence tending to prove that defendant could not constitutionally erect a $250,000 building, since proof of that fact would not have affected plaintiff's claim.

The case of *Ritter v. Harrisburg School District*, 291 Pa. 439, relied on by defendant, is not in point. In that

case Ritter was employed as one of the architects for a general building scheme. Ritter knew that the limitation of the cost of the unit he was to design was $380,-000. Notwithstanding this he proposed to draw plans for an $800,000 building and claimed a commission based on that amount, although he was fully aware of the fact that the district could not legally erect such a structure. Ritter's contract was inseparably bound up with the whole building program and was by express reference made a part of it. Furthermore, Ritter was not seeking to recover the value of the work he had done, but claimed the entire net amount which would have been due him had the entire program been completed and the $800,000 building constructed. In expressly distinguishing the case of *Sauer v. School District of McKees Rocks*, supra, Mr. Justice SCHAFFER said (p. 445) : "There [in the Sauer case] the architect originally claimed commissions on the completed cost of the building. By leave of court he amended his claim so as to recover only for the services actually performed and he was permitted to recover that amount. Had the plaintiff here made a like claim, which on trial he expressly declined to do, he might have succeeded."

In the instant case, although plaintiff did originally claim commissions on the completed cost of the building, the case was tried on the theory that plaintiff was limited to the compensation for the part of the work actually performed. At the trial plaintiff stated that his claim was only for the work which had been completed, and evidence was submitted by defendant to show that plaintiff had not fully performed. During the course of the trial and in his charge the trial judge stated that the correct measure of damages was that which this court applied in *Sauer v. School District of McKees Rocks*, supra, (p. 300) : "Where a party has partly performed an entire contract and is prevented from completing performance by the act of the other party . . ., he may recover in an action on the con-

tract, and the measure of his damages is the contract price less the cost of completing the work: *Harlow v. Beaver Falls Boro.*, 188 Pa. 263." Under such circumstances, even though the statement of claim may have been defective, we will treat the statement as amended and consider the case in accordance with the evidence produced and the theory on which it was tried: *Clark v. Steele*, 255 Pa. 330. Since plaintiff's compensation was to be based on the cost of the building, it was proper, in the absence of a more reliable source of information, to use the estimated cost to ascertain the value of the services which he had performed: *Sauer v. School District of McKees Rocks*, supra; *Orth & Bro. v. Board of Education*, 272 Pa. 411.

Judgment affirmed; costs to be paid by appellant.